UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOSEPH RICHARD JENKINS, | ) |
|     Plaintiff | ) ) ) |
| v. | )    No. 1:14-cv-00403-NT |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
|     Defendant | ) |

**RECOMMENDED DECISION**

In this action, Plaintiff Joseph Richard Jenkins seeks supplemental security income benefits under the Social Security Act. Upon review of Plaintiff's application, Defendant Commissioner found that Plaintiff was disabled as of February 10, 2013. Plaintiff contends that his disability commenced on May 15, 2009.

As explained below, following a review of the record, and after consideration of the parties' written and oral arguments, the recommendation is that the Court remand the matter for further proceedings.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the April 23, 2013, decision of the Administrative Law Judge (ALJ) (ALJ Decision, ECF No. 6-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

Plaintiff's application for disability benefits is based on symptoms secondary to Pick's

---

[1] The Appeals Council "found no reason" to review the ALJ's decision. (ECF No. 6-2, R. 1.)

Disease, a form of Frontotemporal Dementia (FTD). The ALJ found that Plaintiff did not establish that he suffered disabling symptoms between his alleged onset date (May 15, 2009) and February 10, 2013. The ALJ, however, determined that as the result of complications secondary to a myocardial infarction, Plaintiff's residual functional capacity$^2$ and age$^3$ directed a finding of "disabled" under the Medical-Vocational Guidelines as of February 10, 2013.

In rejecting Plaintiff's claim of disability between May 15, 2009, and February 10, 2013, the ALJ concluded that Plaintiff was not limited in his exertional capacity, but was restricted to "simple" work involving no public interaction and only occasional changes in routine. (ALJ Decision ¶ 5.) Although the ALJ found that this residual functional capacity would not permit Plaintiff to engage in his past relevant work, based on the framework of the Medical-Vocational Guidelines, the ALJ determined that Plaintiff would be able to perform other work that existed in substantial numbers in the national economy. (*Id.* ¶ 11.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided that the ALJ applied the correct legal standard and that the decision is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d

---

$^2$ Based on a finding of coronary artery disease status post myocardial infarction, the ALJ reduced Plaintiff's residual functional capacity to light work with certain postural limitations.

$^3$ Plaintiff was 54 on the date of his hearing before the ALJ, and was still 54 when the ALJ issued the decision under review, although Plaintiff was less than four months from his 55th birthday. Under Defendant's regulations, claimants between the ages of 50 and 54 are considered to be "closely approaching advanced age," and the Social Security Administration "will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. §§ 404.1563, 416.963. The ALJ applied the advanced age classification, presumably due to the proximity of Plaintiff's 55th birthday, citing Guideline § 202.06.

2

218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### DISCUSSION

Plaintiff argues that the ALJ erred when he concluded that Plaintiff was not disabled as of May 15, 2009. More specifically, Plaintiff maintains (1) that the ALJ should have made a finding of disability at step 3 based on the Listings, and that the ALJ erred when he failed to call an expert to assess whether Plaintiff's degree of impairment met or was medically equivalent to a listing; (2) that the ALJ failed to perform a proper function-by-function assessment in his RFC analysis, and improperly weighed the expert opinion evidence; and (3) that the ALJ erred in his reliance on the framework of the Guidelines to satisfy Defendant's burden at step 5.

**A.   Medical equivalency**

In his analysis, the ALJ considered whether Plaintiff's FTD-related symptoms met listing 12.02 (organic mental disorders). The ALJ concluded that the impairment did not meet the listing because marked limitations were not present in any area of mental functioning and the record lacked evidence of an episode of decompensation. (*Id.* ¶ 4.) The ALJ also found that the record did not establish the existence of limitations that would satisfy the "C criteria" of Listing 12.02. (*Id.*)

Plaintiff argues that the ALJ erred when he failed to obtain an expert opinion on whether Plaintiff's symptoms were equivalent to those identified in listing 11.04 (central nervous system vascular accident) or listing 12.02. Plaintiff observes that FTD is a disorder recognized by Defendant as one deserving special consideration under Defendant's "compassionate allowance" program, which provides for the expedited handling of claims of individuals with certain

impairments.[4] 20 C.F.R. §§ 404.1602, 416.1002. Plaintiff contends that Defendant's inclusion of FTD within the compassionate allowance program should control the disability determination.

While limited authority exists regarding the compassionate allowance program, persuasive authority supports Defendant's contention that expedited handling under the program does not otherwise change the standards for assessing disability. *See e.g.*, *Jones v. Colvin*, No. 12-CV-05952-JRC, 2013 WL 6409877, at *3 (W.D. Wash. Dec. 9, 2013) ("[A]lthough the objective medical information that is required may be minimal, it nevertheless is still required, still must be sufficient, and nothing appears to have altered plaintiff's burden to present such objective medical evidence of disability."). Indeed, logic suggests that expediting a process does not guarantee a certain result. Otherwise, the process would be irrelevant. The ALJ, therefore, did not err when he decided to assess whether Plaintiff's impairment qualified under a listing. The issue is whether the ALJ erred in his assessment.

According to Defendant's Program Operations Manual System, consideration of listing 11.04 is appropriate in a case involving FTD. (*See supra*, note 4.) One can satisfy the requirements of 11.04 by demonstrating "sensory or motor aphasia resulting in ineffective speech or communication." Dr. Robert Gallon's March 10, 2011, report of neuropsychological evaluation includes the "behavioral observation" that Plaintiff "had a great deal of difficulty giving consistent and specific information[;] … could not give clear descriptions of his problems and … had to be guided[;] … was extremely digressive and inconsistent and seemed to be backtracking"; and gave

---

[4] *See also* Program Operations Manual System (POMS), § DI 23022.170, available at https://secure.ssa.gov/poms nsf/lnx/0423022170, last visited June 11, 2015. The manual indicates, *inter alia*:

> The outcome for individuals with FTD is poor. The disease progresses steadily and often rapidly, ranging from less than 2 years in some individuals to more than 10 years in others. Eventually some individuals with FTD will need 24-hour care and monitoring at home or in an institutionalized care setting.

The manual also suggests that the adjudicator evaluate whether the condition meets listing 12.02, or medically equals listing 11.04, and states that "the decision to allow or deny the claim rests with the adjudicator."

explanations that "often did not make a great deal of sense." (Ex. 5F, R. 312.) Additionally, during testing, Dr. Gallon noted "many instances of word finding problems, grammatical errors and word substitutions." (*Id.*) Testing also revealed deficiencies, including on the Controlled Oral Word Association Test. (R. 313.) The observations, while made prior to the FTD diagnosis, were eventually corroborated by diagnosis (Ex. 10F).[5]

Significantly, if the deficits observed by Dr. Gallon are medically equivalent[6] to "sensory or motor aphasia resulting in ineffective speech or communication," Plaintiff would meet a listing and would be deemed "disabled" for social security purposes regardless of his residual functional capacity. Under the circumstances, the ALJ's failure to consider listing 11.04 cannot be considered harmless.

**B.    Dr. Singer's findings and opinions**

Plaintiff also argues that the ALJ erred when he weighed the expert opinions, particularly with respect to the ALJ's rejection of the findings and opinions of Dr. Clifford Singer, M.D. (Exs. 10F, 12F). Although the ALJ explained in some detail the reasons for his decision to discount Dr. Singer's opinion, the ALJ's rejection of Dr. Singer's February 2013 opinion generates some concern. Noting that Dr. Singer's first examination of Plaintiff occurred more than two years after the alleged onset date, the ALJ wrote that Dr. Singer was "not in a position to assess the claimant's past abilities." (PageID # 56.)

In rejecting Dr. Singer's opinions, the ALJ made determinations for which expert

---

[5] Defendant argues that Plaintiff's argument regarding listing 11.04 is not sufficiently developed and should be treated as waived because Plaintiff did not direct the Court to evidence of record that would support the medical equivalence argument. Dr. Gallon's report, however, is essential to an understanding of Plaintiff's position, the ALJ's decision, and the larger medical record. In fact, Defendant devotes more than a page of discussion to Dr. Gallon's findings. Under the circumstances, Defendant's waiver argument is unpersuasive.

[6] Medical equivalency calls for an inquiry into whether an impairment or combination of impairments "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526, 416.926.

testimony is required.  First, the ALJ cites no medical evidence to support the proposition that with a diagnosis of FTD and an assessment of a patient's functioning at a particular time, a physician with knowledge of the progression of the disease would be unable to describe the limitations on a patient's activities for a period of time prior to that assessment.  At a minimum, the ALJ would need expert testimony to support such a conclusion.  The ALJ's reference to prior statements of Plaintiff and Plaintiff's continued operation of a motor vehicle, without the benefit of expert testimony, is also concerning.  The symptoms and progression of the disease from which Plaintiff suffers are not within common knowledge.  Whether a person with such a disease is an accurate historian, and when certain safety measures should be implemented are topics for which expert testimony is appropriate.  Finally, the opinions of the Disability Determination Services (DDS) expert medical consultants, upon which opinions the ALJ relies in part to reject or discount Dr. Singer's opinions, do not constitute sufficient medical expert testimony to support the rejection of Dr. Singer's February 21, 2013, opinions.  The consultants issued their opinions more than 18 months before Dr. Singer's report, based on an even earlier medical record.  Particularly when assessing the effect of what appears from the record to be a disease that may well implicate a listing and is recognized as deserving expedited assessment due to steady and often rapid progression, the ALJ was required to have a more current medical opinion before rejecting Dr. Singer's findings.

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court remand the matter for further proceedings.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought,

together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

      /s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of June, 2015.